UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
JUN 0 8 2016
BY _____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | No. 3:16-00126 |
| ) | |
| HAILU KABTIMER ) | 42 U.S.C. § 1320a-7b(b) |
| ) | |

# INDICTMENT

COUNTS ONE THROUGH FIVE

THE GRAND JURY CHARGES:

At all times material hereto:

### Introduction

1. Defendant **HAILU KABTIMER** was a physician who practiced in Hendersonville, Tennessee.

2. Defendant **HAILU KABTIMER** accepted and received cash kickback payments in exchange for referring certain patients – including patients covered by Medicare and TennCare – to a Durable Medical Equipment ("DME") supplier.

### Anti-Kickback Statute

3. The Anti-Kickback Statute, Title 42, United States Code, Section 1320a-7b(b), prohibits any person or entity from making or accepting payment, in cash or in kind, to induce or reward any person for referring, recommending or arranging for federally-funded medical services. Congress passed the Anti-Kickback Statute in an attempt to deter the growing problem of fraud and abuse in the health care system.

4. The purpose of the Anti-Kickback Statute is to ensure that referral decisions are made solely with the goal of a patient's well-being. Referring patients based on the expectation of personal profit corrupts the health care system because it encourages medical providers and others to make referral decisions for reasons relating to personal profit rather than a patient's best interests. The payment of kickbacks also corrupts the health care system because they have the effect of generating business for the dishonest provider at the expense of the honest provider who refuses to pay cash kickbacks.

## Background

5. The federal Medicare program ("Medicare") provides basic medical coverage for persons age 65 or over who are entitled to retirement benefits and for persons under age 65 who suffer from certain disabilities. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

6. The federal Medicaid program ("Medicaid") provides basic medical coverage for persons whose incomes are insufficient to meet the costs of necessary medical expenses. Medicaid operates as a joint federal and state healthcare program using both federal and state funds. Tennessee's Medicaid program operated under the name TennCare. TennCare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

7. DME is equipment designed for repeated use that can be used in the treatment of patients with certain medical conditions. Government health programs and private health insurers that provide coverage for a given patient will generally pay for DME that is medically necessary for that patient's treatment.

2

8. Government health programs and private health insurers depend on physicians and other medical providers to determine when certain DME is medically necessary for a particular patient, as evidenced by a prescription and/or a certificate of medical necessity.

9. A medical provider treating a patient for whom DME is medically necessary will often refer such patient to a DME supplier, who will in turn provide the DME to the patient and bill that patient's health insurance program or the pertinent government health program.

10. A continuous positive airway pressure ("CPAP") ventilator is a type of DME that is commonly used to treat patients with breathing problems, including sleep apnea or other sleep disorders.

11. An oxygen unit is a type of DME – specifically, a tank, concentrator, or other device that delivers oxygen to a patient via a tube, mask, or other mechanism. Oxygen units are commonly used to treat patients with chronic obstructive pulmonary disease and other conditions.

12. CPAP ventilators and oxygen units are items for which payment may be made under various Federal health programs.

13. An individual known to the Grand Jury as "Supplier 1" was the owner of a Nashville-based DME supplier who provided CPAP ventilators, oxygen units, and other DME to patients.

14. Supplier 1 billed and received payment from Medicare, TennCare, and other health programs for the provision of CPAP ventilators, oxygen units, and other DME provided to patients who were referred to Supplier 1 by various medical providers and their staff.

## The Kickback Scheme

15. In approximately March 2013, defendant **HAILU KABTIMER** and Supplier 1 agreed to an arrangement under which defendant **HAILU KABTIMER** would be paid cash and, in exchange, defendant **HAILU KABTIMER** would refer patients needing DME to Supplier 1's company.

16. Beginning in or around March 2013, and continuing until in or around April 2014, pursuant to the agreement referenced in preceding paragraph, defendant **HAILU KABTIMER** referred patients needing CPAP ventilators and oxygen units to Supplier 1's company. Supplier 1's company subsequently billed Medicare and other Federal health programs for DME provided to these patients.

17. On eight occasions between March 2013 and April 2014, defendant **HAILU KABTIMER** accepted cash kickback payments in exchange for referring patients to Supplier 1's company. On each of these occasions, defendant **HAILU KABTIMER** was furnished with a document confirming that the cash kickback payment was being provided in exchange for one or more patient referrals.

18. For example, on April 8, 2014 defendant **HAILU KABTIMER** accepted a $500 cash kickback payment in exchange for referring two patients to Supplier 1's company, and signed a receipt confirming this fact. This receipt also specified that defendant **HAILU KABTIMER** was paid $200 for referring a particular patient who was to be supplied with a CPAP and was paid $300 for referring a particular patient who was to be supplied with oxygen.

19. Between March 2013 and April 2014, defendant **HAILU KABTIMER** accepted $3,400 in cash kickback payments in exchange for referring patients to Supplier 1's company.

20. On or about the dates set forth below, with respect to each count, in the Middle District of Tennessee, defendant **HAILU KABTIMER** knowingly and willfully received remuneration, that is a cash kickback in the amount specified, in return for referring individuals for the furnishing or arranging for the furnishing of DME for which payment could be made in whole or in part under a Federal health care program.

| COUNT | DATE | AMOUNT |
|---|---|---|
| 1 | On or about June 17, 2013 | $500 |
| 2 | On or about September 24, 2013 | $400 |
| 3 | On or about November 6, 2013 | $600 |
| 4 | On or about December 5, 2013 | $200 |
| 5 | On or about April 8, 2014 | $500 |

All in violation of Title 42, United States Code, Section 1320a-7b(b).

## FORFEITURE ALLEGATIONS

1. The allegations contained this Indictment are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

2. Upon conviction of any of the offenses charged in this Indictment, defendant **HAILU KABTIMER** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense, including but not limited to: a money judgment in an amount representing the amount of gross profits or other proceeds obtained from the offense.

3. If any of the above-described forfeitable property, as a result of any act or omission of defendant **HAILU KABTIMER**

    a. cannot be located upon .the exercise of due diligence;

5

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code Section, 982(b)(1) to seek forfeiture of any other property of defendant **HAILU KABTIMER** up to the value of the property subject to forfeiture.


FOREPERSON

_____
DAVID RIVERA
UNITED STATES ATTORNEY

_____
WILLIAM F. ABELY
ASSISTANT UNITED STATES ATTORNEY